

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00191-CR

Cesar A. **SALCEDO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 11-1545-CR
Honorable William Old, Judge Presiding

Opinion by:     Sandee Bryan Marion, Justice

Sitting:        Sandee Bryan Marion, Justice
                Rebeca C. Martinez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  March 19, 2014

AFFIRMED

Appellant, Cesar Salcedo, pled guilty to possession of a controlled substance.  In two issues on appeal, appellant asserts (1) the trial court erred by failing to issue findings of fact and conclusions of law, and (2) the trial court erred in denying his motion to suppress.  We affirm.

### BACKGROUND

Corporal Jaime Suarez of the Seguin Police Department's Special Crimes Unit received an anonymous tip that a Hispanic male was selling drugs out of a blue and grey Suburban near the intersection of Stratton and Val Walk.  Corporal Suarez decided to investigate the tip and spotted

a vehicle matching the description parked along a road near the intersection. As he approached, Corporal Suarez saw a woman later identified as Susan Salcedo, appellant's wife, standing on the sidewalk outside the vehicle. Mrs. Salcedo appeared to be crying and arguing with the driver of the Suburban. Corporal Suarez stopped to determine whether Mrs. Salcedo required any assistance.[1] Although no audio can be heard, the dashboard camera in Corporal Suarez's vehicle begins to record at this time.

The video shows Corporal Suarez initiated contact with appellant and Mrs. Salcedo by stopping his unmarked police vehicle approximately ten feet behind the Suburban with the vehicle's emergency lights flashing. Corporal Suarez exited his vehicle wearing plain clothing with his gun and badge visible around his waist. Corporal Suarez testified he introduced himself to the couple and informed them the reason he stopped was to determine whether Mrs. Salcedo required assistance. Corporal Suarez was informed Mrs. Salcedo and appellant had been having marital issues and were attempting to reconcile their differences. Mrs. Salcedo confirmed she was fine and did not require police assistance. Corporal Suarez then asked appellant and Mrs. Salcedo for identification; however, neither had identification on them.

After speaking with the couple for approximately two and a half minutes, Corporal Suarez returned to his vehicle. At this point, Corporal Suarez's microphone is activated and audio from the recording can now be heard. Corporal Suarez reinitiated contact with appellant and Mrs. Salcedo and asked each for their name and date of birth. Corporal Suarez returned to his vehicle and relayed this information to check for warrants. Approximately eight minutes later, Corporal Suarez was informed appellant had several outstanding warrants and thereafter arrested appellant.

---

[1] Corporal Suarez's incident report indicated he stopped to perform a "welfare check."

While waiting for additional police officers to arrive, Corporal Suarez twice asked appellant if there was anything illegal in the Suburban, which appellant denied. As additional officers arrived, Corporal Suarez asked appellant: "What are we going to do with the car?" Appellant responded that his wife needed the Suburban to take their children to school. Corporal Suarez asked appellant a third time whether there was anything illegal in the Suburban and for appellant's consent to search the Suburban before releasing it to Mrs. Salcedo. Corporal Suarez testified appellant consented to the search, which uncovered marijuana and approximately five grams of cocaine.[2]

Appellant was charged with possession of a controlled substance with intent to deliver and later filed a pre-trial motion to suppress. After a hearing, the trial court denied appellant's motion to suppress. After his motion to suppress was denied, appellant pled guilty to possession of a controlled substance.

## MOTION TO SUPPRESS

In his second issue, appellant asserts the trial court erred in denying his motion to suppress because his interaction with Corporal Suarez constituted a seizure, and such seizure was not justified under the community-caretaking exception to the Fourth Amendment's protection against unreasonable seizures. The State responds that appellant's interaction with Corporal Suarez was a consensual encounter that did not constitute a seizure. We agree with the State.

### 1.  Standard of Review

When reviewing a trial court's ruling on a motion to suppress, we apply an abuse of discretion standard and may overturn the trial court's ruling only if it is outside the zone of reasonable disagreement. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). We

---

[2] The video shows appellant responded by shrugging his shoulders. Although Corporal Suarez's microphone was active, the audio from this portion of the recording is unintelligible.

use a bifurcated standard of review, giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness, and apply a de novo standard of review to pure questions of law and mixed questions that do not depend on the determination of credibility. *Id.* at 922–23. The question of whether a given set of facts amounts to a consensual encounter or a seizure under the Fourth Amendment is subject to de novo review. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

We view the evidence in the light most favorable to the trial court's ruling. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007). In a motion to suppress hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). "When a trial court makes explicit findings of fact, the appellate court determines whether the evidence (viewed in the light most favorable to the trial court's ruling) supports these fact findings." *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court does not make explicit findings of fact, we infer the necessary factual findings that support the court's ruling when the evidence supports the implied findings. *Gutierrez*, 221 S.W.3d at 687. We must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009). "Even if the trial court had limited its conclusion of law to a particular legal theory, an appellate court would not be required to defer to that theory under its de novo review." *Alford v. State*, 400 S.W.3d 924, 929 (Tex. Crim. App. 2013). This holds true even if the trial court gave the wrong reason for its ruling. *Armendariz v. State*, 123 S.W.3d 401, 403 (Tex. Crim. App. 2003).

**2. Analysis**

Article I, Section 9 of the Texas Constitution and the Fourth Amendment to the United States Constitution protect individuals from unreasonable searches and seizures. U.S. CONST.

amend. IV; TEX. CONST. art. I, § 9. However, not all police encounters implicate the Fourth Amendment's protection against unreasonable seizures. *See Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002). Interactions between the public and the police fall into three categories: (1) consensual police-citizen encounters that require no objective justification; (2) investigative detentions that require articulable reasonable suspicion; and (3) arrests that require probable cause. *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011). During consensual police-citizen encounters, a police officer is free to approach an individual and ask questions, including requesting identification and other information, "'so long as a reasonable person would feel free to disregard the police and go about his business.'" *Bostick*, 501 U.S. at 434 (quoting *California v. Hodari D.*, 499 U.S. 621, 628 (1991)); *Castleberry*, 332 S.W.3d at 466; *see also Garcia-Cantu*, 253 S.W.3d at 243 ("Police officers may be as aggressive as the pushy [sales]man at the front door, the insistent panhandler on the street, or the grimacing street-corner car-window squeegee man.").

Only when an officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen," has a seizure occurred. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). There is no per se rule to analyze whether a police-encounter amounts to a seizure. *See Bostick*, 501 U.S. at 440. Rather, courts must look at the totality of the circumstances, viewed from an objective perspective, to determine whether a reasonable person would have felt free to ignore the police officer's request or terminate the encounter. *See id.* at 437–38; *Garcia-Cantu*, 253 S.W.3d at 244. Examples of circumstances that might indicate a seizure has occurred would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *Crain v. State*, 315 S.W.3d 43, 49–50 (Tex. Crim. App. 2010). While "time, place, and surrounding circumstances must be taken into

account, [] the officer's conduct is the most important factor in determining whether a police-citizen interaction is a consensual encounter or a Fourth Amendment seizure." *Castleberry*, 332 S.W.3d at 467.

Citing *Garcia-Cantu*, appellant relies heavily on Corporal Suarez's use of emergency lights as support for his argument that he was seized. In that case, the Texas Court of Criminal Appeals examined the distinction between a consensual encounter and a Fourth Amendment seizure. *Garcia-Cantu*, 253 S.W.3d at 238. The court of appeals stated "the record reveals the trial court required that [the officer] articulate a reasonable suspicion of criminal activity to justify his approach to [the defendant's] truck and that [the officer's] use of the spotlight was sufficient to amount to a detention." *Id*. at 240–41. However, the Court of Criminal Appeals rejected the court of appeals' reliance upon this single factor to determine whether the defendant was seized and reiterated that such a determination is made in light of the totality of the circumstances. *Id.* at 250. The Court recognized other jurisdictions frequently hold the use of flashing emergency lights is sufficient to constitute a seizure; however, the Court did not create a per se rule that the use of emergency lights amounts to a seizure. *See id*. at 243 n.43; *see also Hudson v. State*, 247 S.W.3d 780, 785 (Tex. App.—Amarillo 2008, no pet.) ("Activation of overhead lights on a police vehicle does not necessarily make an encounter non-consensual."); *Franks v. State*, 241 S.W.3d 135, 142 (Tex. App.—Austin 2007, pet. ref'd) (stating argument that defendant detained based on activation of overheard lights not determinative). In assessing the totality of the circumstances, the *Garcia-Cantu* Court recognized the following quote from Professor LaFave as useful:

> [T]he encounter becomes a seizure if the officer orders the suspect to "freeze" or get out of the car. So too, other police action which one would not expect if the encounter was between two private citizens—boxing in the car, approaching it on all sides by many officers, pointing a gun at the suspect and ordering him to place his hands on the steering wheel, or *use of flashing lights as a show of authority*— will likely convert the event into a Fourth Amendment seizure.

*Garcia-Cantu*, 253 S.W.3d at 243 (quoting 4 WAYNE R. LAFAVE, SEARCH AND SEIZURES § 9.4(a), at 433–35 (4th ed. 2004)) (emphasis added). Appellant argues LaFave's statement, "use of flashing lights as a show of authority—will likely convert the event in a Fourth Amendment seizure," supports his assertion that he was seized.

We disagree with appellant's characterization of Corporal Suarez's use of flashing emergency lights "as a show of authority." As the El Paso Court of Appeals has stated:

> We can conceive of many situations in which people in stopped cars approached by officers flashing their lights would be free to leave because the officers would be simply communicating with them to ascertain that they are not in trouble. Under such circumstances, depending on their facts, the officers may well activate their emergency lights for reasons of highway safety or so as not to unduly alarm the stopped motorists.

*Martin v. State*, 104 S.W.3d 298, 301 (Tex. App.—El Paso 2003, no pet.).

In this case, Corporal Suarez did not use flashing emergency lights to initiate a traffic stop. Appellant's Suburban was already stopped and parked on the left side of the road facing oncoming traffic, and Corporal Suarez was driving an unmarked police vehicle wearing plain clothes. Thus, it would have been reasonable for Corporal Suarez to activate his emergency lights so as to identify himself as a police officer and not unduly alarm appellant or Mrs. Salcedo. It would also have been reasonable for Corporal Suarez to activate his emergency lights for roadway safety given the location of appellant's Suburban. In this instance, we believe Corporal Suarez's use of flashing emergency lights did not cause appellant to yield to his show of authority. The use of flashing emergency lights is but one factor we consider under the totality of the circumstances. *See Bostick*, 501 U.S. at 437–38; *Garcia-Cantu*, 253 S.W.3d at 243 n.43.

Corporal Suarez was the only police officer present at the time contact with appellant was initiated. Corporal Suarez did not block appellant's vehicle; rather, he parked approximately ten feet behind the Suburban leaving its path forward unobstructed. The time and place of the

encounter, approximately 3:45 p.m. in a well-populated public place, also supports a conclusion that appellant would have felt free to terminate the encounter. *See Garcia-Cantu*, 253 S.W.3d at 249 n.42 ("It is a reasonable inference that the objectively reasonable person would feel freer to terminate or ignore a police encounter in the middle of the day in a public place where other people are nearby than he would when parked on a deserted, dead-end street at 4:00 a.m.").

In assessing officer conduct, we note that Corporal Suarez did not display any coercive or threatening conduct. Corporal Suarez did not draw or point his weapon at appellant. Nor did he issue any commands, tell appellant he was not free to leave, or initiate physical contact with appellant. The fact that Corporal Suarez requested identification from appellant is a factor we consider in assessing the totality of the circumstances; however, it is not determinative. *See Castleberry*, 332 S.W.3d at 466 ("Even if the officer did not tell the citizen that the request for identification or information may be ignored, the fact that the citizen complied with the request does not negate the consensual nature of the encounter."). Finally, although the recording lacks audio during Corporal Suarez's initial contact with appellant, the audio from the remaining portion of the encounter indicates Corporal Suarez's demeanor was congenial and his tone polite.

Based on the totality of the circumstances and viewing the evidence in the light most favorable to the trial court's ruling, we conclude the interaction between Corporal Suarez and appellant was a consensual encounter. *Compare Castleberry*, 332 S.W.3d at 468 (determining encounter consensual where officer approached, asked for identification, inquired into purpose, and encounter occurred around 3:00 a.m. in well-lit area with "quite a bit of foot traffic"), *and Randall v. State*, No. 10-11-00234-CR, 2012 WL 2053849, at *4–5 (Tex. App.—Waco June 6, 2012, pet. ref'd) (holding encounter consensual where officer approached with flashing lights, did not threaten or approach with weapon drawn, did not physically touch defendant, and spoke in casual tone), *with Johnson v. State*, 414 S.W.3d 184, 193 (Tex. Crim. App 2013) (concluding

defendant seized where officer partially blocked defendant's vehicle, shined spotlight into defendant's car, spoke in authoritative voice, and requested defendant's identification).

In his first issue, appellant requests we remand this case to the trial court to issue additional findings addressing the reasonableness of Corporal Suarez's exercise of his community caretaking function. Because we hold the initial contact was not a seizure, we need not determine whether the seizure was justified pursuant to the community caretaking exception to the Fourth Amendment, which presupposes a seizure. *See Corbin*, 85 S.W.3d at 276.

## CONCLUSION

We conclude the interaction between appellant and Corporal Suarez was a consensual encounter. Accordingly, the trial court did not err in denying appellant's motion to suppress. Therefore, we affirm the trial court's judgment.

Sandee Bryan Marion, Justice

Do not publish