

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-10-00160-CR
_____


RICKY DURYAN HUGHES, Appellant

V.

THE STATE OF TEXAS, Appellee



On Appeal from the County Court at Law #1
Gregg County, Texas
Trial Court No. 2010-0507



Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

Ricky Duryan Hughes appeals his conviction for driving while intoxicated (DWI), enhanced to a class A misdemeanor by a prior conviction for DWI. Officer Manfred Gilow, a police officer with the Longview Police Department, observed Hughes' car in a parking lot of Teague Park legally parked with the headlights on. As Gilow approached, the headlights of Hughes' vehicle turned off. Although he had not observed any illegal conduct and cars were often parked in this parking lot late at night, Gilow parked his marked police jeep at an angle to Hughes' car and turned on the vehicle's bright overhead white lights. Officer Gilow then illuminated the front of Hughes' vehicle with his spotlight. Gilow testified he did not observe any illegal activity, but testified the Teague Park area has a high incidence of drug and prostitution activity. During the interaction, Gilow developed a suspicion that Hughes was intoxicated and ultimately arrested Hughes for DWI. The trial court denied Hughes' motion to suppress, and Hughes, pursuant to a plea bargain, pled nolo contendere and pled true to the enhancement. The trial court sentenced Hughes, consistent with the plea bargain, to one year of confinement, suspended the sentence, and placed Hughes on fifteen months' community supervision. Hughes' sole issue on appeal is whether the trial court erred in denying his motion to suppress.

A trial court's decision on a motion to suppress evidence is reviewed by applying a bifurcated standard of review deferring to the trial court's determination of historical facts that depend on credibility, but reviewing the trial court's application of the law de novo. *Burke v.*

2

*State*, 27 S.W.3d 651, 654 (Tex. App.—Waco 2000, pet. ref'd). The appellate court affords almost total deference to a trial court's determination of the historical facts supported by the record, especially when the trial court's fact-findings are based on an evaluation of credibility and demeanor. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The court also affords such deference to a trial court's ruling on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those questions turns on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. The appellate court, though, reviews de novo those questions not turning on credibility and demeanor. *Id.*

The dispute between the parties in this case concerns a single issue—whether the initial interaction between Officer Gilow and Hughes was an encounter or an investigative detention. Not every encounter between police and citizens implicates the Fourth Amendment. *Hunter v. State*, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997). There are three categories of interactions between police officers and citizens: encounters, investigative detentions, and arrests. *State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002).

An encounter is a purely consensual interaction which a citizen may terminate at any time. *Saldivar v. State*, 209 S.W.3d 275, 281 (Tex. App.—Fort Worth 2006, no pet.). Police officers do not violate the Fourth Amendment by merely approaching an individual in public to ask questions. Such an encounter does not require any justification whatsoever on the part of an officer. *United*

3

*States v. Mendenhall*, 446 U.S. 544, 555 (1980); *Hunter*, 955 S.W.2d at 104. Encounters are consensual as long as the person would feel free to go about his business. *Hunter*, 955 S.W.2d at 104; *see Florida v. Bostick*, 501 U.S. 429, 434 (1991); *California v. Hodari D.*, 499 U.S. 621 (1991).

A temporary or investigative detention is a seizure. *Josey v. State*, 981 S.W.2d 831, 838 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd). An investigative detention occurs when an individual is encountered by a police officer, yields to the officer's display of authority, and is temporarily detained for purposes of an investigation. *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995). A person yields to an officer's display of authority when a reasonable person would not feel free to continue walking or otherwise terminate the encounter. *Bostick*, 501 U.S. at 436; *Hodari D.*, 499 U.S. at 628; *State v. Velasquez*, 994 S.W.2d 676, 679 (Tex. Crim. App. 1999). Because an investigative detention is a seizure, reasonable suspicion must be shown by the officer to justify the seizure. *State v. Larue*, 28 S.W.3d 549, 553 n.8 (Tex. Crim. App. 2000).

In determining whether a seizure of the person has occurred for Fourth Amendment purposes, a court must consider the totality of the circumstances surrounding the encounter. *Bostick*, 501 U.S. at 439; *Hunter*, 955 S.W.2d at 104. The crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person he was not at liberty to ignore the police presence and go about his business. *Bostick*, 501 U.S. at 439; *State v. Velasquez*, 994 S.W.2d 676, 679 (Tex.

4

Crim. App. 1999); *Hunter*, 955 S.W.2d at 104; *Jackson v. State*, 77 S.W.3d 921, 927 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

Hughes argues the initial interaction between Officer Gilow and Hughes was an investigative detention because Gilow parked in front of Hughes' vehicle and activated his overhead "take-down" lights. The State responds that neither of these actions constitute a sufficient show of authority that a reasonable person would not feel free to leave.

The Texas Court of Criminal Appeals has considered the fact that a police officer "'boxed in' Appellee's parked truck" in determining whether a seizure had occurred. *See State v. Garcia-Cantu*, 253 S.W.3d 236, 247 n.44 (Tex. Crim. App. 2008). This Court has recently held the fact that a police officer "boxed in" the appellant's vehicle between an entry gate and the police officer's vehicle may suggest a seizure has occurred. *See Sosa v. State*, No. 06-10-00161-CR, 2011 Tex. App. LEXIS 842 (Tex. App.—Texarkana Feb. 4, 2011, no pet. h.) (mem op). The position of Gilow's vehicle, however, did not prevent Hughes from driving away. The trial court found, in its findings of fact,[1] that "Officer Gilow parked his patrol car cater-corner (diagonally). The position of the officer's car did not block the pickup truck or prevent the pickup from leaving." Gilow agreed he pulled in front of Hughes' vehicle and "kind of angled [the police car] towards him where he was backed into a space." We will defer to the trial court's finding of historical fact

---

[1]This Court has noted the "better practice" is for the trial court to make findings of fact when denying a motion to suppress. *Morrow v. State*, 139 S.W.3d 736, 741 (Tex. App.—Texarkana 2004, no pet.). Although the trial court was not required, under the facts of this case, to make findings of fact, we applaud the trial court's diligence in making such findings.

5

that Gilow did not "box-in" Hughes with his patrol vehicle. As such, this Court's recent opinion in *Sosa* is clearly distinguishable.

Further, we are not convinced that Officer Gilow's activation of his overhead "take-down" lights and use of his spotlight were sufficient to constitute a sufficient show of authority.

It is important to note that the lights activated by the police officer in this case were not his overhead emergency lights which flash red and blue,[2] but rather the overhead white safety or "take-down" lights.[3] We believe this distinction to be extremely important. Overhead emergency lights are synonymous with an instruction to stop. The lights in this case, while the evidence established are "blinding," do not carry the same connotations as emergency lights. While under some circumstances, overhead "take-down" lights could be sufficient along with other circumstances to indicate a sufficient demonstration of authority, we do not believe the facts of this case demonstrate a sufficient show of authority to constitute an investigative detention. The Texas Court of Criminal Appeals has specifically noted "the use of a spotlight, by itself, is not

---

[2]The Texas Court of Criminal Appeals has noted "[t]he use of 'blue flashers' or police emergency lights are frequently held sufficient to constitute a detention or seizure of a citizen, either in a parked or moving car." *Garcia-Cantu*, 253 S.W.3d at 245 n.43 (distinguishing use of spotlight from overhead lights); *see Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010) (activation of overhead lights factor in concluding pedestrian was detained). *But see Franks v. State*, 241 S.W.3d 135, 142 (Tex. App.—Austin 2007, pet. ref'd) (activation of overhead emergency lights to illuminate area, standing alone, not sufficient to constitute detention of motorist already parked at rest park). This Court has recently noted that emergency overhead lights which flash red and blue can be a factor suggesting the interaction was an investigative detention. *See Sosa*, 2011 Tex. App. LEXIS 842 (finding interaction an investigative detention when officer activated emergency overhead lights and "boxed in" appellant's vehicle).

[3]In its findings of fact, the trial court found "Officer Gilow turned on his overhead white safety lights which illuminated the pickup truck and immediate area." Gilow described the lights he activated as "just white lights" and agreed they were "[l]ike a big security light." Gilow distinguished them from his overhead "blue and red" lights. We will defer to the trial court's finding of historical fact in concluding the lights were "white safety lights," also known as "take-down" lights.

a circumstance that necessarily converts a consensual encounter into a Fourth Amendment detention." *Garcia-Cantu*, 253 S.W.3d at 245 n.43. The overhead white safety or "take-down" lights at issue in this case are extremely similar to spotlights. While Officer Gilow testified the lights can be "blinding," it is clear their primary purpose is for illumination—not as a signal to stop. The use of the overhead white safety or "take-down" lights along with the use of a spotlight was not a sufficient show of authority that a reasonable person would conclude he was not free to leave.

Last, we note Officer Gilow testified Hughes was "not detained" and could have terminated the contact at any time. Gilow, though, admitted he would have activated his red and blue emergency lights and pursued Hughes if he had left.[4] Whether a reasonable person would conclude he was free to leave is determined by the objective circumstances of the case, not by the subjective views of either the police officers or the person being questioned. *Id.* at 244 n.41. An officer's subjective intent is relevant only to the extent "such an intent is communicated to the citizen by means of an authoritative voice, commanding demeanor, or other objective indicia of official authority." *Id*. The record contains no evidence that Officer Gilow informed Hughes he would be detained if he attempted to leave.

In this case, we defer to the trial court's finding that Hughes' vehicle was not "boxed in" by Officer Gilow's police car. The combined use of the spotlight and the overhead white security or

---

[4]Officer Gilow testified the fact that Hughes had terminated the encounter would give him reasonable suspicion to detain him. We do not endorse this legal conclusion made by Gilow.

"take-down" lights would not have communicated to a reasonable person that he was not at liberty to terminate the encounter.   There is no evidence that Gilow otherwise communicated to Hughes that he was not free to leave.   We believe the initial interaction between Gilow and Hughes is best classified as an encounter and Gilow was not required to have reasonable suspicion.   The trial court did not err in denying Hughes' motion to suppress.

For the reasons stated, we affirm.


Bailey C. Moseley
Justice

Date Submitted:        February 22, 2011
Date Decided:          February 24, 2011

Publish

8