

# IN THE
# TENTH COURT OF APPEALS

_____

### No. 10-11-00234-CR

**LARRY GORDON RANDALL,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

_____

**From the County Court at Law No. 2
Brazos County, Texas
Trial Court No. 10-01347-CRM-CCL2**

## OPINION

Larry Gordon Randall was convicted of the offense of driving while intoxicated. TEX. PENAL CODE ANN. § 49.04 (West Supp. 2011). He pled guilty after the trial court overruled his motion to suppress. Because the trial court did not err in overruling Randall's motion to suppress,[1] the trial court's judgment is affirmed.

---

[1] Randall filed three motions to suppress in each of which he complained about the initial contact with the officer. The trial court's ruling refers to "[T]he motion to suppress," in the singular. It is unclear which motion, or all three, was overruled. We, likewise, use the word, "motion," in the singular.

# BACKGROUND

Jonathan Huth, an officer with the College Station Police Department, saw a car pulled off to the side of the road on a divided two lane highway with a grass center median in the early morning hours of February 27, 2010. It was not a well-lit area and no developments or businesses were in that area. No one was visible around the car but the car's lights were on. Huth decided to pull up behind the car to see what was going on, such as whether the car was broken down or the driver was lost. When he got behind the car, he turned on his overhead flashing lights and spotlight. He notified dispatch that he was stopping for a "motorist assist." At the hearing on Randall's motion to suppress, Huth testified that he turns on his overhead lights just about every time he gets out of his car when he is on the side of the road for safety reasons. He also testified that he turned on his lights for this particular encounter as a notice to other drivers that he was going to be outside of his patrol car on the side of the road.

Huth walked up to the driver's side window to see who was in it. The window was rolled down, and Randall was talking on his cell phone. No one else was in the car. Huth testified at the hearing that as soon as he got up to the window, he could smell the odor of an alcoholic beverage and noticed that Randall's eyes were glassy and his speech was slurred. He also noticed that Randall had what looked to be coffee spilled on his shirt and all over the center console of the car. Huth stood at the window for "a minute" before Randall turned and acknowledged his presence but continued talking

on his cell phone. When Randall paused his conversation, Huth asked Randall if everything was alright, and Randall replied that he was waiting on his wife. After a little more conversation, Huth then asked Randall to hang up the phone so they could talk. Huth stated at the hearing that within the first few minutes of him standing by the window, he suspected that Randall might be under the influence of alcohol.

Randall testified at the suppression hearing that when he saw the officer's lights on, he did not feel free to leave. He also testified that he hung up the phone when the officer tapped on his window and that the officer, when he first arrived at the window, commanded him to get off the phone.

## MOTION TO SUPPRESS

Randall argues that the trial court erred in denying his motion to suppress because the initial contact between the officer and Randall was a detention rather than a consensual encounter and that the detention was not justified by the community caretaking exception to the Fourth Amendment warrant requirement. *See Wright v. State*, 7 S.W.3d 148, 151 (Tex. Crim. App. 1999). *See also Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002) ("But, even without reasonable suspicion or probable cause that an offense has been committed, a police officer may reasonably seize an individual through the exercise of his community caretaking function.").

*Standard of Review*

A trial court's ruling on a motion to suppress is reviewed on appeal for abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). As the reviewing court, we view all of the evidence in the light most favorable to the trial court's ruling. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). When the trial court does not make explicit findings of fact, as is the case here,[2] we infer the necessary factual findings that support the trial court's ruling if the record evidence, viewed in the light most favorable to the ruling, supports these implied fact findings. *State v. Kelly*, 204 S.W.3d 808, 819 (Tex. Crim. App. 2006). Thus, the trial court is given almost total deference in its determination of historical facts, especially if those are based on an assessment of credibility and demeanor. *Garcia-Cantu*, 253 S.W.3d at 241. This same deferential standard applies regardless of whether the trial court has granted or denied a motion to suppress evidence. *Id.* "Thus, the party that prevailed in the trial court is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *Id.* The question of whether a given set of historical facts amounts to a consensual police-citizen encounter or a detention under the Fourth Amendment, however, is subject to de novo review because it is an issue of law. *Id.*

---

[2] Although the trial court somewhat explained its ruling in a letter order, the court was not requested to, and did not, make explicit findings of fact.

*Detention v. Encounter*

We first address whether the initial contact between Randall and Huth was a detention or a consensual encounter. Randall contends that the contact was a detention because a reasonable person in his situation would view Huth's act of pulling in behind Randall's parked car while Huth activated his overhead red and blue flashing lights as an instruction to "stop," or, "do not move, you are not free to leave."

A few years ago, the Court of Criminal Appeals had the opportunity to examine the distinction between a citizen-police encounter and a citizen-police detention in *State v. Garcia-Cantu*. *State v. Garcia-Cantu*, 253 S.W.3d 236 (Tex. Crim. App. 2008). Relying primarily on the United States Supreme Court's decision in *Florida v. Bostick*, the Court of Criminal Appeals concluded that trial and appellate courts must view "the totality of the circumstances" of the contact in the light most favorable to the trial judge's implicit (or explicit) factual findings and that the question of when contact between police officers and a person in a car constitutes a detention depends on specific facts as to the manner of the contact, the degree of authority displayed, and all other circumstances surrounding the incident. *State v. Garcia-Cantu*, 253 S.W.3d 236, 244 (Tex. Crim. App. 2008); *see Florida v. Bostick*, 501 U.S. 429, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991). The Court noted that *Bostick* mandates a court to consider all of the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the

officer's requests or otherwise terminate the encounter. *Garcia-Cantu*, 253 S.W.3d at 242 (citing *Bostick*, 501 U.S. at 439). Examples of circumstances that might indicate a detention has occurred would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *Crain v. State*, 315 S.W.3d 43, 49-50 (Tex. Crim. App. 2010) (citing *U.S. v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980)). "Each citizen-police encounter must be factually evaluated on its own terms; there are no per se rules." *Garcia-Cantu*, 253 S.W.3d at 243; *see Bostick*, 501 U.S. at 439-440.[3]

In his brief, Randall relies on two cases to support his theory that Huth's use of overhead lights turned the contact into a detention. His reliance on these two cases is misplaced.

The first case relied upon by Randall is *Crain v. State*, decided by the Court of Criminal Appeals in 2010. *Crain v. State*, 315 S.W.3d 43 (Tex. Crim. App. 2010). In *Crain*, the Court concluded that the officer's "act of shining his patrol car's overhead lights[4] in the [pedestrian] appellant's direction, coupled with his request-that-sounded-like-an-order, to 'come over here and talk to me,' cause[d] the appellant to yield to [the

---

[3] The Florida Supreme Court had established a per se rule that police officers who boarded buses at scheduled stops and questioned passengers without articulable reasons for doing so necessarily "seized" those passengers within the meaning of the Fourth Amendment. The use of per se rules such as this was struck down by the United States Supreme Court.

[4] These lights were not the emergency red and blue flashing lights.

officer's] show of authority" and that a detention occurred. *Id*. at 52 (footnote added). Although the Court recognized that some cases have discussed whether the use of emergency flashing lights in certain circumstances would be considered a detention, s*ee id*. at 50, 51-52; *see also Garcia-Cantu*, 253 S.W.3d at 243 n. 43; *Hudson v. State*, 247 S.W.3d 780, 785 (Tex. App.—Amarillo 2008, no pet.) ("when a person stops in response to a patrol car's emergency lights rather than of his own accord, an investigatory detention has occurred…."), emergency lights were not used in *Crain*, and the Court did not create a per se rule that the use of emergency lights amounted to a detention.

In the second case relied upon by Randall, the Texarkana Court determined that the use of "take down" lights combined with the fact that the defendant's vehicle was not actually "boxed in" by the police officer did not convert the initial contact between the officer and the defendant into a detention. *Hughes v. State*, 337 S.W.3d 297, 302 (Tex. App.—Texarkana 2011, no pet.). In route to that decision, the court noted that the lights used in its case were not the overhead red and blue flashing lights. *Id*. at 301. The court then made the statement, upon which Randall relies, "Overhead emergency lights are synonymous with an instruction to stop." *Id*.

We disagree with the scope of this statement as argued by Randall. First, it is a general statement which is not supported by case authority and is dicta because it is not necessary to the disposition of Hughes' appeal. Second, to determine that the use of overhead emergency flashing red and blue lights, *by itself*, transforms a police-citizen

contact from an encounter to a detention would be contrary to the rule of *Bostick,* which requires a review of the *totality of the circumstances,* and would establish a "per se" rule also contrary to the holding of that case. Although the use of overhead emergency flashing red and blue lights *may* give rise to a detention in certain circumstances, it does not *always* convert an encounter into a detention. *See Franks v. State*, 241 S.W.3d 135, 142 (Tex. App.—Austin 2007, pet. ref'd) (use of overhead emergency flashing lights not determinative); *Martin v. State*, 104 S.W.3d 298, 301 (Tex. App.—El Paso 2003, no pet.) (same). Third, the statement addresses what overhead emergency flashing red and blue lights may mean if the motorist is moving; but Randall was not moving. And finally, it overstates what overhead emergency flashing red and blue flashing lights mean in most circumstances and to most motorists which is simply to yield the right of way to an emergency vehicle and only if the emergency vehicle follows you to the side of the road does it indicate "stop."

Randall suggested in oral argument that we should only review the facts and circumstances surrounding the contact up until and including the point at which Huth activated his overhead emergency flashing lights or at the most until he reached Randall's car. We need not, he continued, review anything past that point in time. However, such a bright line demarcation of where to end our review as Randall suggests runs afoul of *Bostick's* totality of the circumstances concept. Certainly we cannot use hindsight to justify the contact between an officer and a citizen just as we

cannot use their subjective beliefs as to whether the officer did not intend to detain the citizen or whether the citizen believed he was not free to leave. But we must go further than where Randall argues we stop and review all the facts and circumstances surrounding the contact. Thus, in order to determine whether, in this case, Huth's use of the overhead emergency flashing lights created a detention, we review the totality of the circumstances surrounding the contact, not simply whether he used the overhead lights.

In addition to the testimony presented at the suppression hearing, an in-car video of the initial contact between Huth and Randall was introduced into evidence which corroborates Huth's testimony. The video begins with Huth turning onto the roadway and eventually pulling in behind a car stopped on the side of the road. The overhead emergency flashing lights are activated when Huth is on the shoulder, still in his patrol car, and is approaching the parked car. Huth talks with dispatch and then exits his patrol car. It appears he has a flashlight in his left hand as he walks up to the car. He approaches the driver's side of the car, and Randall can be heard talking. Huth says, "hi" and waits for a few moments. Randall pauses his conversation, says, "yes, sir," and Huth asks if everything is alright. Randall replies, "yeah" and explains that he is trying to direct his wife to his location. After a little more conversation, Huth asks Randall to do him a favor and call Randall's wife back in a few minutes.

There was nothing threatening or coercive in Huth's approach to Randall or Randall's car. Huth's flashlight was not used in any threatening manner and no weapon was drawn. There was no tapping on the window by Huth as Randall had testified. Because Randall could be heard on the video talking as soon as Huth approached, the trial court could have found that the window was already down. Huth did not touch Randall's person at all. There were no other officers approaching Randall with Huth. What Huth said and his tone of voice was very casual, not demanding. Huth did not command Randall to hang up his cell phone as soon as he approached Randall's window as Randall had testified. Although Randall also testified that he felt like he was not free to leave, his subjective belief is not a factor. *See California v. Hodari D.*, 499 U.S. 621, 628, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991) ("…the test for existence of a "show of authority" is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person."). Further, Randall was not "boxed in" by Huth and could have driven away. *See Hughes v. State*, 337 S.W.3d 297, 302 (Tex. App.—Texarkana 2011, no pet.). The fact that the overhead emergency flashing lights were activated is, in this situation, not determinative. Huth's overhead emergency flashing lights were not activated in order to pull over Randall; he was already stopped. And the trial court could have found, based on Huth's testimony, that they were used for safety reasons only.

CONCLUSION

Viewing the totality of the circumstances in the light most favorable to the trial court's implicit findings and ruling, we hold that this initial contact between Huth and Randall was an encounter, not a detention. Thus, the trial court did not err in overruling Randall's motion to suppress for this reason.

Because we have held that the initial contact was not a detention, we need not determine whether a detention was justified pursuant to the community caretaking exception to the Fourth Amendment. The community caretaking exception presupposes a detention. *See Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002).

Accordingly, Randall's sole issue is overruled, and the trial court's judgment is affirmed.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
(Justice Davis concurs without an opinion)
Affirmed
Opinion delivered and filed June 6, 2012
Publish
[CR25]