

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00098-CR

_____

JASON MASSEY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 202nd District Court
Bowie County, Texas
Trial Court No. 13F0017-202

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

# MEMORANDUM OPINION

Jason Massey appeals from his conviction of possession of a controlled substance. Massey complains of the trial court's ruling on his motion to suppress evidence, the trial court's instruction to the jury regarding consideration of evidence allegedly obtained illegally, and the chain of custody of some of the State's evidence. We find that the trial court erred in denying Massey's motion to suppress evidence. We, therefore, reverse the conviction and remand this case to the trial court for further proceedings consistent with this opinion.

## I. Factual Background

Texarkana police officer Cory Caudle was dispatched to investigate a suspicious vehicle parked in front of a convenience store. Caudle was told that the store clerk made the call to police, that the clerk only said that the vehicle looked suspicious, and that the vehicle had been in front of the store "for an extended period of time." Caudle indicated that, in his experience, the area around the convenience store was a "hot spot" for illegal drug sales. Caudle testified,

> That particular gas station is used for -- through my training and experience and the stuff that I've encountered over the years I've been here,[1] there have been numerous drug arrests made from that location. People use that area to meet to do their drug deals. Somebody that's selling will meet somebody there to buy. And it's been -- like I said, as far as I know, it's been a hot spot for that as long as I've been doing this job.

Caudle acknowledged that he parked his police unit "right behind" the car, later shown to be driven by Massey. As soon as Caudle exited his squad car, Massey got out of his car, and Caudle instructed Massey to sit back in his vehicle. As Caudle approached Massey's vehicle, he

---

[1]At the suppression hearing, held October 23, 2013, Caudle said he had been a police officer eight and one-half years. The incident leading to Massey's conviction occurred December 28, 2012.

2

smelled marihuana coming from within the car. When asked about the marihuana odor, Massey told Caudle that there was marihuana in the car. A subsequent search of Massey's vehicle produced marihuana and methamphetamine, the latter of which was the source of Massey's conviction.

## II.    Motion to Suppress

In his first point of error, Massey complains that the trial court erred in denying his motion to suppress all evidence obtained after Caudle detained him and searched his car. "We review a trial court's decision on a motion to suppress evidence by applying a bifurcated standard of review." *Graves v. State*, 307 S.W.3d 483, 489 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Rogers v. State*, 291 S.W.3d 148, 151 (Tex. App.—Texarkana 2009, pet. ref'd)). "Because the trial court is the exclusive trier of fact and judge of witness credibility at a suppression hearing, we afford almost total deference to its determination of facts supported by the record." *Young v. State*, 420 S.W.3d 139, 141 (Tex. App.—Texarkana 2012, no pet.) (citing *State v. Ross*, 32 S.W.3d 853, 856–57 (Tex. Crim. App. 2000); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We afford the same deference to a trial court's rulings on mixed questions of law and fact if the resolution of those questions turns on an evaluation of credibility and/or demeanor. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). We review de novo the trial court's application of the law and determination of questions not turning on credibility and/or demeanor. *Carmouche*, 10 S.W.3d at 327; *Guzman*, 955 S.W.2d at 89. Since all the evidence is viewed in the light most favorable to the trial court's ruling, we are obligated to uphold the denial of

3

Massey's motion to suppress if it was supported by the record and was correct under any theory of law applicable to the case. *See Carmouche*, 10 S.W.3d at 328; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

Massey argues that, when Officer Caudle parked behind his car, Massey was not free to leave the parking lot and, thus, was detained. "An investigative detention[2] occurs when an individual is encountered by a police officer, yields to the officer's display of authority, and is temporarily detained for purposes of an investigation." *Hughes v. State*, 337 S.W.3d 297, 300 (Tex. App.—Texarkana 2011, no pet.) (citing *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995)). An investigative detention is only justified where the officer can point to specific and articulable facts which, taken together "with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity." *Cullum v. State*, 270 S.W.3d 583, 584 (Tex. Crim. App. 2008) (Meyers, J., dissenting) (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). We review de novo a trial court's ruling on whether an individual was detained. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). Whether the officer had a reasonable suspicion to conduct the detention is gauged by an objective standard, disregarding any subjective intent of the officer; we consider

---

[2]As explained by the Texas Court of Criminal Appeals,

> There are three distinct types of police-citizen interactions: (1) consensual encounters that do not implicate the Fourth Amendment; (2) investigative detentions that are Fourth Amendment seizures of limited scope and duration that must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures, that are reasonable only if supported by probable cause. Police officers are as free as any other citizen to approach citizens to ask for information or cooperation. Such consensual encounters may be uncomfortable for a citizen, but they are not Fourth Amendment seizures.

*Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013) (citations omitted) (footnotes omitted).

4

the totality of the circumstances in this review. *Ford v. State*, 158 S.W.3d 488, 492–93 (Tex. Crim. App. 2005).

The video recording from the police dashboard camera (dash cam) clearly shows that Caudle's vehicle was parked several feet behind Massey's car, which was parked at the storefront. When Caudle parked his vehicle, Massey exited his car. At that time, Caudle instructed Massey to get back in his car, and Massey complied. Caudle acknowledged that he said "the vehicle" was not free to leave and that Massey was detained. At the time he parked behind Massey's vehicle, the only report he had was that Massey's vehicle had been parked on this lot for an extended time period. Caudle detained Massey to determine why Massey had been parked in this location for so long. Caudle knew that this area was one where drugs were commonly distributed. Caudle further testified that he had no knowledge that criminal conduct had occurred or was occurring when he parked directly behind Massey's vehicle.

In *Garcia-Cantu*, the Texas Court of Criminal Appeals upheld the trial court's determination that a detention had occurred. *Garcia-Cantu*, 253 S.W.3d at 250. At about 4:00 a.m., the testifying officer found the defendant's truck parked at the end of a dead-end street. *Id.* at 239. The officer testified that the truck was parked in a high-crime area, which he characterized as having ten to fifteen arrests a month. However, he also conceded that the area had yielded only two drug arrests and no prostitution arrests in the previous six months. *Id.* The officer trained his spotlight on the truck and parked about ten feet behind and to the left of the truck. *Id.* He testified that, in that position, the driver could not move the vehicle without the officer first moving his car. *Id.* at 240. The court observed in a footnote that "[m]ost courts have

5

held that when an officer 'boxes in' a car to prevent its voluntary departure, this conduct constitutes a Fourth Amendment seizure," and went on to summarize about nine federal and state cases addressing such situations. *Id.* at 244, 246 n.44.

The trial court in *Garcia-Cantu* granted the defendant's motion to suppress, and the Court of Criminal Appeals observed that a reviewing court must analyze all circumstances in the light most favorable to the trial court's ruling. The Texas Court of Criminal Appeals opined that the trial court had "implicitly found that appellee was blocked in by" the first officer at the scene and "that appellee could not move his car." *Id.* at 249. The Court of Criminal Appeals upheld the trial court's determination that the circumstances did not provide reasonable suspicion to justify the detention.

In *Johnson v. State*, 414 S.W.3d 184 (Tex. Crim. App. 2013), an officer responded to a call from an apartment resident who reported a suspicious black person sitting on the steps of an apartment building, watching cars. The caller, who identified the number of the apartment unit in which she lived, described the suspicious person. When the officer went to the apartment complex, he neither saw an individual matching the description of the suspicious person nor did he contact the citizen who had provided the description. Driving around the complex, he saw a car backed into a parking space, which the officer acknowledged was not illegal. *Id.* at 186–87. The officer directed his spotlight on the vehicle and found a driver matching some, but not all, of the descriptors given by the caller. The officer parked his car in such a way as to partially block the suspect's vehicle. The officer said the vehicle could have been maneuvered around the police car to leave. *Id.* at 187–88. The officer spoke to the suspect in a "'loud authoritative

6

voice maybe . . . [his] outside voice.'" *Id.* at 188. At both the passenger and driver's windows, the officer smelled marihuana. He then asked the driver to step out of the vehicle and detained him. The trial court held that the detention was supported by reasonable suspicion and overruled Johnson's motion to suppress. The intermediate court of appeals held that the event was not a detention, but a consensual encounter, and affirmed the trial court. *Id.* at 190.

The Court of Criminal Appeals "[could] not conclude that, under the totality of the circumstances in this case, a reasonable person would have felt free to leave," or "to decline the officer's requests" and, therefore, held that the case presented a detention, not an encounter. *Id.* at 193. The court took note of the officer's (1) directing his spotlight[3] on the occupant of the vehicle, (2) "at least partially block[ing] the person's vehicle such that the person would have had to 'maneuver' around the police car to drive away," (3) addressing the person in a "'loud[,] authoritative voice'" and "asking, 'what's going on,'" and (4) demanding that the car's occupant produce identification. *Id.* Taken together, these factors "manifest[ed] a detention, that is, an interaction that a reasonable person would not feel free to terminate." *Id.* As the Court of Criminal Appeals stated in *Johnson*,

---

[3]The officer described the spotlight as "'pretty darn bright.'" *Johnson*, 414 S.W.3d at 193.

> While none of these circumstances individually would necessarily lead to an inescapable conclusion that the person was detained, under the totality of these circumstances, we conclude that appellant was indeed detained—perhaps when the officer shined a bright light on him in his car, but certainly when the officer blocked appellant's car such that appellant would have had to "maneuver" his car from its parking place if he wished to terminate the interaction—thus implicating Fourth Amendment protections. On this record, the trial court could not reasonably have concluded that a reasonable person in appellant's shoes would have felt free to disregard the officer's approach, show of authority, and commands or felt free to terminate the interaction.

*Id.* at 193–94.

In the instant case, though, the trial court concluded Caudle had reasonable suspicion to detain Massey based on the call from the store clerk. The trial court reasoned, "If you have reasonable suspicion to stop, . . . you are then allowed to investigate." The trial court further explained,

> But you have a store clerk . . . that has called. It's not [Caudle] just driving by and at random picking up this location. You have a store clerk who has a right to make a call, which would lead then to a reasonable suspicion that there may be something going on. If it was a random person, then that may be a little different situation, but we have a store clerk here.

We respectfully disagree that reasonable suspicion arose based on the clerk's report of suspicious activity. Reasonable suspicion is dependent on the content of the information possessed by the police and its degree of reliability. *Alabama v. White*, 496 U.S. 325, 330 (1990). Even if the store clerk is considered a reliable citizen informant, the content of the information from the clerk provided no description of behavior that indicated any criminal activity. Even considering Caudle's testimony concerning the clerk's report that Massey's car had been "parked out there for an extended period of time" and Caudle's experience that there was a high volume of drug-related crime in the area, we find that the information known to Caudle at the time was too

8

general to constitute specific, articulable facts that criminal activity was afoot. There is no indication that the store clerk provided specific information as to what constituted suspicious activity, except the length of time the car was seen in front of the store, and there was no indication of how long the car had been there. Further, Caudle's personal knowledge that the area was a "hot spot" for illegal drug activity did not specifically connect Massey to criminal conduct.[4] Reasonable suspicion requires specific, articulable facts "that some crime was, or is about to be, committed . . . ." *State v. Duran*, 396 S.W.3d 563, 568 (Tex. Crim. App. 2013).

Officer Caudle arrived at the convenience store with no reasonable suspicion that Massey was engaged in criminal activity. From the dash cam video recording, it is clear Massey was blocked by Caudle's police car from behind and the store in front. Massey complied with Caudle's instruction to return to his vehicle. This compliance, coupled with the placement of the police car in a manner that prevented Massey from leaving the scene, can only be characterized as submission to Caudle's authority, effectively restraining Massey's liberty. "Generally[,] . . . when an officer through force or a showing of authority restrains a citizen's liberty, the encounter is no longer consensual" and becomes a seizure, that is, a detention. *State v. Woodard*, 341 S.W.3d 404, 411 (Tex. Crim. App. 2011).

The State argues that sufficient reasonable suspicion existed based on (1) the report of suspicious activity, (2) Caudle's knowledge of the high volume of illegal drug transactions in the

---

[4]For example, in *Scott v. State*, 549 S.W.2d 170, 172–73 (Tex. Crim. App. 1976), the detention was held illegal where it was based on the defendant's presence in a "high crime area," the high volume of thefts previously committed in the area, and the defendant's use of a dark, infrequently traveled street at 1:30 a.m. In *McKinney v. State*, 444 S.W.3d 128, 134 (Tex. App.—San Antonio 2014, pet. ref'd), the San Antonio Court of Appeals held that the fact the defendant was standing in a high-crime area was not enough to justify an investigative detention.

9

area, and (3) the odor of marihuana detected by Caudle. However, by the time Caudle detected an odor of marihuana, he had already detained Massey. Caudle testified,

> I began to exit my vehicle, and as I exited the vehicle, the driver's door of the gold Nissan opened as well and the occupant got out, at which time, because I was there to investigate the vehicle because of the call I received, I told him to have a seat back in the car. And as I was approaching the vehicle to speak with the driver, I immediately smelled an odor of marihuana coming from the vehicle.

We review the facts known to the officer at the inception of the detention as a detention must be justified at its inception. *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968).

The State also argues that we must afford deference to the trial court's findings. The facts of this case are not genuinely in dispute. The dash cam video recording clearly shows the sequence of events, and neither party seriously disputes those events. The trial court found that the detention was justified by reasonable suspicion supplied by the clerk's report of suspicious activity, not that a detention did not occur. We simply disagree with the legal conclusion that these facts constitute sufficient reasonable suspicion to authorize a detention, and that legal conclusion we review de novo. *See Carmouche*, 10 S.W.3d at 327.

Further, the State argues that we should disregard Caudle's statements that Massey was not free to leave after Caudle parked immediately behind his vehicle and that Massey was, thereby, detained. We do not consider the subjective intent of an officer. Rather, we consider whether there was reasonable suspicion to justify a detention based on the totality of the circumstances. However, Caudle's statement is not a statement of subjective intention; it is, instead, an expression of an accomplished fact. Because Caudle detained Massey without the requisite reasonable suspicion, the trial court erred in denying Massey's motion to suppress.

10

### III. Harm

Having found error in the failure to suppress the evidence—methamphetamine—obtained from the unjustified detention, we consider whether this error harmed Massey. *See State v. Daugherty*, 931 S.W.2d 268, 273 (Tex. Crim. App. 1996). After detaining Massey, Caudle smelled marihuana, obtained an acknowledgment from Massey that marihuana was in the car, searched Massey's vehicle, and found 12.65 grams of methamphetamine. This led to Massey's conviction for the second degree felony of possession of four grams or more but less than 200 grams of methamphetamine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(d) (West 2010). The punishment range in this case was enhanced by proof of a prior felony conviction. *See* TEX. PENAL CODE ANN. § 12.42(b) (West Supp. 2014). Massey was sentenced to forty-five years' confinement. We find he was harmed by the denial of the suppression.

We reverse the trial court's order denying Massey's motion to suppress, and we remand this case to the trial court for further proceedings consistent with this opinion. Because of our resolution of the suppression issue, it is not necessary to address Massey's other two points of error.

Jack Carter
Justice

Date Submitted:     December 9, 2014
Date Decided:       December 31, 2014

Do Not Publish

11