

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-16-00252-CR

JAZZLYN SHEREE FOOTE                                                    APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

----------

### FROM COUNTY CRIMINAL COURT NO. 8 OF TARRANT COUNTY
### TRIAL COURT NO. 1329236

----------

## MEMORANDUM OPINION[1]

----------

Appellant Jazzlyn Sheree Foote appeals from her conviction for driving while intoxicated. In two points, she challenges the denial of her pretrial motion to suppress and the imposition of a statutorily mandated court cost in the subsequent bill of cost. We conclude that the trial court did not err by denying Foote's motion to suppress. And because Foote pleaded guilty under a plea-

---

[1]*See* Tex. R. App. P. 47.4.

bargain agreement and did not obtain the trial court's permission to appeal, we dismiss her point directed to the assessment of court costs.

## I. BACKGROUND

On April 6, 2013, at 10:30 p.m., Arlington Police Officer Christopher Janssen responded to an alert from dispatch that an "accident/fight" was occurring at a nearby gas station. Dispatch informed Janssen that a 911 caller had reported that a gray Mazda car had hit a truck near pump number seven and that the Mazda's driver, a black woman wearing a white shirt and floral shorts, was arguing with the truck's driver. Janssen believed that the truck's driver, a Mr. Robles, was the 911 caller. The caller also stated that the Mazda's driver appeared intoxicated and relayed the license plate of the Mazda.

When Janssen arrived, he saw the gray Mazda, which he identified by its license plate, and a truck near pump number seven. Janssen noticed that the people near the vehicles matched the descriptions given by the 911 caller. Robles began to leave in his truck, and Janssen saw the woman in floral shorts get in the driver's side of the Mazda and "start to pull away." When Robles saw Janssen arriving, he stopped his truck. Janssen got out of his patrol car to determine what had happened,[2] walked up to the Mazda, and asked the driver to stop.

---

[2]Janssen stated that in such situations he first attempts to get basic information: "[W]hat was going on, . . . what's happening? Why are we called? Why were you arguing? Was there an accident? Are you hurt? Are you okay?"

2

The driver of the Mazda stopped and rolled down her window, verbally identifying herself as Foote to Janssen after she stated she did not have a driver's license. Janssen noticed several clues of intoxication when she rolled down her window and began talking to him:

> I noticed when she rolled down her window I smelled a strong odor of an alcoholic beverage emanating from the car. I didn't know if it was coming from her yet at the time or not, but I could smell it coming from the vehicle. I noticed that . . . her eyes were kind of bloodshot and watery, and when she was talking to me she had very slurred speech. She had a real hard time putting sentences together, and I had to ask her to repeat things to get information from her.

Janssen, who had 12 years' experience as a police officer and had conducted approximately 400 intoxication investigations, determined that he needed to further investigate whether Foote had been driving while intoxicated.

First, however, Janssen went to speak with Robles.[3] Robles told Janssen that while he was putting gas in his truck, it "lurch[ed], like it had been hit from the front." Robles looked and saw the Mazda parked in front of his truck, causing Robles to assume that the Mazda had hit the front of his truck.[4] Foote got out of the Mazda and began "arguing with him and yelling at him." Robles believed that Foote was intoxicated. Robles's report further convinced Janssen that he should investigate whether Foote was intoxicated.

---

[3]Janssen was able to go over to Robles because at that point, other officers had arrived at the gas station.

[4]Janssen determined that there was no damage to Robles's truck, and Robles stated that he did not want to "file charges."

3

Janssen returned to Foote and asked her to get out of her car to perform standard field-sobriety tests, which Foote consented to do. Foote failed the horizontal-gaze-nystagmus test and the walk-and-turn test. She was unable to perform the one-leg-stand test Based on his training, his experience, and Foote's apparent intoxication, Janssen arrested her for driving while intoxicated. Foote was later charged by information with the misdemeanor offense of driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04(a)–(b) (West Supp. 2016).

Before trial, Foote filed a motion to suppress, arguing that Janssen did not have reasonable suspicion to initially detain her.[5] The trial court held a hearing at which only Janssen testified. Janssen, after hearing the 911 call for the first time in court, recognized that he had been mistaken that Robles had been the 911 caller even though he had noted in his report that Robles had been.[6] He also stated that he did not believe he had reasonable suspicion to detain Foote when he initially approached her car. But he further testified that he did not have his patrol car's spotlight on when he initially approached because the gas station was well lit and that Foote could have driven away or not rolled down her window—she was free to leave even though he asked her to stop her car and

---

[5]In her motion and at the suppression hearing, Foote challenged more than the initial detention as violating the Fourth Amendment; however, on appeal, she expressly states that she "challenges only Officer Janssen's decision to initially detain her."

[6]Janssen's report was not introduced into evidence.

4

talk to him. At the conclusion of the hearing, the trial judge orally denied the motion and stated his reasoning on the record:

> This Court having heard testimony from the witness[], and reviewing the case law, although contrary to what the officer stated, the Court does believe that there was reasonable suspicion. Based on the nature of the call, that the officer did have a duty to at least identify what was going on, although the information learned by the officer later turned out, in fact, not to be truly accurate of what the situation was, the nature of the call dictated and his officer's sworn duty would require to make an assessment of what was going on, of identifying the parties and finding out . . . what, in fact, if anything was going on based upon the 911 call.
>
> . . . The Court will deny the Motion to Suppress.

Approximately four months after the hearing, Foote filed a request for findings of fact and conclusions of law. The trial court did not file further findings or conclusions, and the record does not reflect that Foote submitted proposed findings and conclusions for the trial court's signature.

Foote then pleaded guilty to the information. Following the plea-bargain agreement between Foote and the State, the trial court sentenced her to three days' confinement and awarded to the State "all costs of this prosecution." The clerk's itemized bill of cost, which was not incorporated into the judgment, reflected that $100 of the $394.10 in total court costs was for "EMERGENCY MANAGEMENT SERVICES." *See* Tex. Code Crim. Proc. Ann. art. 102.0185 (West Supp. 2016).

Foote filed a notice of appeal, and the trial court certified that because Foote pleaded guilty under a plea-bargain agreement with the State, she could

5

appeal only "those matters that were raised by written motion filed and ruled on before trial."  Tex. R. App. P. 25.2(a)(2)(A).  The trial court did not give Foote permission to appeal other issues. *See* Tex. R. App. P. 25.2(a)(2)(B).  She now challenges the trial court's suppression ruling and the assessment of the emergency-services cost.

## II. MOTION TO SUPPRESS

Foote first argues that the trial court erred by denying her motion to suppress, challenging only Janssen's initial detention.  A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000).  An officer conducts a lawful temporary detention when he or she has an objective, reasonable suspicion to believe that an individual is violating the law.  *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).  Foote contends that neither the specific facts known to Janssen nor the rational inferences to be drawn from those facts allowed him to reasonably conclude that Foote "was, had been, or soon would be engaged in criminal activity."

Although the trial court did not file formal findings of fact and conclusions of law as requested, it made findings and stated its conclusions on the record at the hearing.  Foote does not raise a complaint on appeal directed to the lack of further findings and conclusions and relies on the trial court's oral statements as

6

formal findings. *See Greene v. State*, 358 S.W.3d 752, 755 (Tex. App.—Fort Worth 2011, pet. ref'd). Because the trial court's oral findings and conclusions are not so incomplete that we are unable to make a reasoned legal determination, we will do likewise. *See State v. Saenz*, 411 S.W.3d 488, 494–95 (Tex. Crim. App. 2013); *Greene*, 358 S.W.3d at 755.

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review: We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility or demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). We will uphold a trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case, even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007).

Here, although the trial court based its ruling on the presence of reasonable suspicion to detain Foote, we conclude that the denial was correct based on the applicable legal theory that Janssen's first contact with Foote was a consensual encounter not requiring reasonable suspicion. A consensual encounter, as opposed to an investigative detention or arrest, does not implicate Fourth Amendment concerns and requires neither reasonable suspicion nor probable cause. *See Terry*, 392 U.S. at 19; *Citizen v. State*, 39 S.W.3d 367, 370 (Tex. App.—Houston [1st Dist.] 2001, no pet.). An encounter is consensual if the

7

individual is free to terminate the interaction at any time. *See Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002); *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995) (op. on reh'g). "[A] seizure does not occur simply because a police officer approaches an individual to ask a few questions." *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *see State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002). An encounter is consensual if a reasonable person would feel free "to disregard the police and go about [her] business." *California v. Hodari D.*, 499 U.S. 621, 628 (1991). Thus, whether an encounter is consensual or something more, implicating the Fourth Amendment, turns on the presence of official coercion to induce cooperation. *See United States v. Drayton*, 536 U.S. 194, 203–04 (2002); *State v. Garcia-Cantu*, 253 S.W.3d 236, 243 (Tex. Crim. App. 2008); *Hunter v. State*, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997).

The evidence before the trial court reveals that a reasonable person would have felt free to disregard Janssen's request to stop. And the trial court's oral findings made on the record adequately show historical facts to support that legal conclusion. *See State v. Mendoza*, 365 S.W.3d 666, 672–73 (Tex. Crim. App. 2012). Contrary to Foote's assertion that Janssen "plainly admit[ted] that he ordered [Foote] to remain at the scene," the references to the reporter's record Foote provides show that Janssen "asked" Foote "to stop and talk to [him]." Janssen approached Foote's car on foot without blocking her in with his patrol car. He did not use his patrol car's spotlight. As the State asserts, "Janssen

simply walked over to [Foote] and asked her to roll down her car window, a request that he [repeatedly] testified [Foote] was free to ignore."[7]  No evidence showed that Janssen used a tone of voice or gesture indicating that her compliance was compelled.  *See United States v. Mendenhall*, 446 U.S. 544, 554 (1980).  And the record does not show that the situation rendered Foote particularly vulnerable to official coercion or authority.  *See Garcia-Cantu*, 253 S.W.3d at 249 n.42.  The totality of the surrounding circumstances as introduced to the trial court supports a legal conclusion that Janssen's initial interaction with Foote was a consensual encounter.  *See, e.g., State v. Woodard*, 341 S.W.3d 404, 412–14 (Tex. Crim. App. 2011); *Hughes v. State*, 337 S.W.3d 297, 302 (Tex. App.—Texarkana 2011, no pet.); *State v. Priddy*, 321 S.W.3d 82, 87–88 (Tex. App.—Fort Worth 2010, pet. ref'd); *Ashton v. State*, 931 S.W.2d 5, 7 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd).  *See generally State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011) (holding determination of nature of encounter is legal question subject to de novo review).  Therefore, the trial court did not err by denying Foote's motion to suppress based on the record evidence

---

[7]Of course, Janssen's subjective intent or motivation is not taken into account when considering the totality of the circumstances.  *See Garcia-Cantu*, 253 S.W.3d at 244 n.41.  But his uncontradicted testimony regarding the surrounding circumstances, the actions he took, and his experience and general knowledge are relevant to determine whether a reasonable person would have felt free to disregard Janssen's requests.  *See id.* at 243–44.

and this applicable legal theory.[8]  *See Woodard*, 341 S.W.3d at 414.  We overrule point one.

## III.  CHALLENGED COURT COST

In her second point, Foote argues that the statute authorizing imposition of the emergency-services court cost is facially unconstitutional because the cost does not relate to the administration of the criminal-justice system.  However, Foote pleaded guilty under a plea-bargain agreement, and the trial court's certification recognized that she could only appeal issues raised by motion and ruled on before trial—the trial court did not give Foote permission to appeal.  *See* Tex. R. App. P. 25.2(a)(2); *see also* Tex. Code Crim. Proc. Ann. art. 44.02 (West 2006).  In order to confer jurisdiction on this court to address her point attacking the constitutionality of a costs statute, Foote was required to obtain the trial

---

[8]Even if Janssen's encounter with Foote were not consensual, we would conclude that at the time he initially approached Foote, he objectively possessed specific, articulable facts combined with their rational inferences that could have led him to reasonably conclude that "something out of the ordinary [was] occurring" that was "related to crime," which provided the requisite reasonable suspicion to justify the investigative detention.  *Viveros v. State*, 828 S.W.2d 2, 4 (Tex. Crim. App. 1992); *see, e.g., Brother v. State*, 166 S.W.3d 255, 258 (Tex. Crim. App. 2005); *Perkins v. State*, No. 05-15-01300-CR, 2017 WL 2665157, at *5–6 (Tex. App.—Dallas June 21, 2017, no pet. h.) (mem. op., not designated for publication); *Morris v. State*, No. 05-16-00256-CR, 2017 WL 908792, at *3 (Tex. App.—Dallas Mar. 8, 2017, no pet.) (mem. op., not designated for publication); *Morris v. State*, No. 02-09-00433-CR, 2011 WL 1743769, at *4 (Tex. App.—Fort Worth May 5, 2011, no pet.) (mem. op., not designated for publication).  Accordingly, the trial court did not err by concluding that Janssen had reasonable suspicion for an investigative detention even though Janssen testified he did not.  *See State v. Arizmendi*, No. PD-0623-16, 2017 WL 2152516, at *5 (Tex. Crim. App. May 17, 2017) ("The standard for whether a stop is legal is an objective one, and the subjective intent of the officer is irrelevant.").

court's permission to appeal. *See Boyett v. State*, 485 S.W.3d 581, 597 (Tex. App.—Texarkana 2016, pet. ref'd) ("The appellate record and the trial court's certification . . . are clear that, in this plea bargain case, Boyett reserved only the right to appeal the trial court's ruling on pretrial matters. Thus, we must dismiss [Boyett's legal-insufficiency point] for want of jurisdiction."); *Conklin v. State*, No. 01-08-00838-CR, 2010 WL 1568578, at *1–2 (Tex. App.—Houston [1st Dist.] Apr. 8, 2010, no pet.) (mem. op., not designated for publication) ("[A] defendant must raise even a jurisdictional issue in a pre-trial motion or receive permission from the trial court that accepted the plea bargain in order to bring the issue on appeal."). Without such permission, we do not have jurisdiction over this appellate point. *See Chavez v. State*, 183 S.W.3d 675, 680 (Tex. Crim. App. 2006); *Seaton v. State*, No. 01-15-00722-CR, 2016 WL 6213000, at *2 (Tex. App.—Houston [1st Dist.] Oct. 25, 2016, pet. ref'd) (mem. op. on reh'g, not designated for publication), *petition for cert. filed*, (U.S. May 5, 2017) (No. 16-9115); *Estrada v. State*, 149 S.W.3d 280, 282 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (op. on reh'g). We dismiss point two.

## IV. CONCLUSION

We conclude that because Janssen's initial encounter with Foote was consensual, the trial court did not err by denying her pretrial motion to suppress. But because Foote pleaded guilty under a plea-bargain agreement and because the trial court did not grant her permission to appeal, we cannot address her

11

challenge to the emergency-services court cost.  Accordingly, we affirm the trial court's judgment.  *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  LIVINGSTON, C.J.; GABRIEL and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  July 20, 2017